UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NOROTOS, INC.,<br><br>     Plaintiff,<br><br>  vs.<br><br>OPS-CORE, INC.,<br><br>     Defendant. | Case No.  1:09-CV-10215-NG<br><br>Hon. Nancy Gertner |
| AND RELATED COUNTERCLAIM. | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**

**IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION**

**OF INFRINGEMENT OF U.S. PATENT NO. 6,751,810**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.    STATEMENT OF FACTS ..................................................................................... 1

III.    STATUS OF THE CASE ...................................................................................... 3

IV.    PERTINENT LEGAL STANDARDS.................................................................... 3

    A.    Pertinent Legal Standards Re Summary Adjudication ............................................ 3

    B.    Pertinent Legal Standards re Direct Infringement ................................................... 4

V.    ARGUMENT ........................................................................................................ 4

    A.    Ops-Core's VAS SHROUD and Accompanying Mounting Mechanism Directly Infringe Claim 22 of the '810 Patent............................................................ 4

        1.    The Meaning and Scope of Claim 22 ........................................................ 4

            a)    "Shroud Plate".......................................................................... 6

            b)    "Shell" ..................................................................................... 6

            c)    "Insert" .................................................................................... 7

            d)    "A Lock and a Release Mechanism" ............................................. 7

            e)    "Smooth" ................................................................................ 10

            f)    "Lock Plate" ........................................................................... 10

        2.    The VAS SHROUD and Mounting Mechanism Meet the Limitations of Claim 22 ........................................................................ 10

VI.    CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..........................................................................3, 4

*Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc., KBI, Inc., and Astrazeneca LP v. Mutual Pharm. Co.*,
  384 F.3d 1333 (Fed. Cir. 2004).......................................................8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986), *cert denied*,  484 U.S. 1066 (1988) ...............................3

*Freeman v. Gerber Products Co.*,
  357 F. Supp. 2d 1290 (D. Kan. 2005) ...........................................8

*Freni Brembo S.p.A. v. Alco Components, Ltd.*,
  No. 04, C 5217, 2005 U.S. Dist. LEXIS 11714 (N.D. Ill. May 31, 2005)........................8

*Graco Children's Products, Inc. v. Regalo International LLC*,
  No. 97-6885, 2000 U.S. Dist. LEXIS 11133 (E.D. Pa. Aug. 8, 2000) .............................8

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991).......................................................4

*Lampi Corp. v. American Power Products, Inc.*,
  228 F.3d 1365 (Fed. Cir. 2000).......................................................7

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004).......................................................7

*Markman v. Westview Instruments*,
  517 U.S. 370 (1996)..........................................................4

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995).......................................................8

*Smithkline Diagnostics, Inc. v. Helena Laboratoriess Corp.*,
  859 F.2d 878 (Fed. Cir. 1988), *aff'd* 926 F.2d 1161 (Fed. Cir. 1991) .............................4

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995) *cert. denied*, 516 U.S. 987 (1995)......................................4

*Texas Digital System, Inc. v. Telegenix, Inc.*,
  308 F.3d 1193 (Fed. Cir. 2002).......................................................8

## <u>TABLE OF AUTHORITIES (Cont.)</u>

**<u>Page(s)</u>**

**CASES**

*Vitronics Corp. v. Conceptronic, Inc.*,
 90 F.3d 1576 (Fed. Cir. 1996)............................................................................................6


### **STATUTES**

Fed. R. Civ. P. 56.......................................................................................................................3, 4

## I.   INTRODUCTION

Plaintiff, Norotos, Inc. ("Norotos") seeks partial summary adjudication that Claim 22 of U.S. Patent No. 6,751,810 ("the '810 Patent") is literally infringed by the offer for sale, distribution, and use by Defendant Ops-Core, Inc. ("Ops-Core") of a shroud plate for headgear which is used solely with a mounting mechanism for night vision devices ("Mounting Mechanism").   Ops-Core designates the accused product as the VAS SHROUD.   More specifically, Ops-Core has directly infringed the '810 Patent by its use of the VAS SHROUD in combination with a Mounting Mechanism.

There are no disputed issues of material fact.  The structure and operation of the accused VAS SHROUD and its intended Mounting Mechanism are known.  The invention claimed in the patent-in-suit is neither complex nor confusing.  As shown below, the meaning of the terms of Claim 22 which may need to be construed is clear from the '810 Patent and its file history.  A simple comparison of the construed claim with the accused VAS SHROUD and Mounting Mechanism shows that each element of Claim 22 is literally present.  Accordingly, summary adjudication of literal infringement is warranted.

## II.   STATEMENT OF FACTS[1]

In about 2002, Jonathan R. Prendergast of Norotos developed an improved shroud plate to act as an interface between a helmet or other headgear and a helmet mount for a night vision device.  Prendergast Decl., ¶ 3.   Unlike previous helmet attachment mechanisms, this shroud plate was designed to have no unnecessary edges on which another object, such as a shroud line of a parachute or a dangling tree branch in heavy foliage, could catch, thereby greatly improving the safety of the wearer.  *Id.,* ¶ 4.  A patent application directed to Mr. Prendergast's invention was filed on March 13, 2003 which matured into U.S. Pat. No. 6,751,810 which issued on June 22, 2004.

The first version of the invention offered by Norotos had a lock and a release mechanism

---

[1] The facts in this Memorandum are attested to in the Declarations of Jonathan R. Prendergast ("Prendergast Decl."), Ronald Soto ("Soto Decl."), Thomas J. Daly ("Daly Decl."), or Norberto R. Chavez ("Chavez Decl.").

incorporated into the shell of the shroud plate.  Prendergast Decl., ¶ 5.  These would then interact with a lock plate on the mount for the night vision device to hold the mount in place.  *Id., ¶* 5. Later, because of a desire to make the merits of the invention available for preexisting mounts which had a lock and a release mechanism incorporated into the lock plate, Norotos introduced an embodiment of the invention having an insert able to interact with the lock and release mechanism in a lock plate.  *Id., ¶* 7.  It was this later version of the invention that was copied by Ops-Core.

In August 2008, Norotos became aware of VAS SHROUD being offered for sale in Ops-Core's 2008 catalog and on-line at Ops-Core's website.  Norotos evaluated the VAS SHROUD and on October 30, 2008, Ronald Soto ("Soto"), President of Norotos, sent a letter to Ops-Core expressing his concern about its sale of a product containing "substantially the same features as are claimed in Norotos's patents."  *See* Soto Decl*., ¶* 4.

David Rogers ("Rogers"), Vice President of Ops-Core, responded to Soto in a letter dated November 1, 2008.  Rogers asserted that the VAS SHROUD did not infringe because it did not contain a "lock" or "release mechanism."  However, Rogers admitted that Ops-Core had purchased several mounts which would have contained lock and release mechanisms and provided them to customers along with its VAS SHROUD.  *Id., ¶* 5.  Rogers also indicated that Ops-Core was planning to expand its sales of the VAS SHROUD product.  Soto Decl., ¶ 5, Exh. A.

A further exchange of letters by the parties, followed by an exchange of letters by counsel for the parties, did not lead to a resolution.  Ops-Core continued to assert that it did not infringe because the "lock" and "release mechanism" recited in the Norotos patent claims "are located on an external component rather than on the shroud plate."  *See* Daly Decl., ¶ 4.  Norotos then initiated the present suit.  Shortly thereafter, requests for reexamination of the patentability of Norotos's patents were filed on behalf of Ops-Core.  Despite its earlier position, those requests for reexamination asserted that a prior art mounting mechanism having the lock and release mechanism located on an external component and then used in conjunction with a keeper

attached to the helmet anticipated the claims in Norotos's patents.  Daly Decl., ¶ 6, Exh. F.  The Patent Office agreed that the claims extended to lock and release mechanisms in a separate component, but found the claims patentable in view of other distinctions.  Daly Decl., ¶ 13.

Norotos now proceeds with its reexamined claims, claims whose patentability has been confirmed.

## III.   STATUS OF THE CASE

On February 12, 2009, Norotos commenced this action alleging, *inter alia,* that Ops-Core infringed the '810 Patent[2] by virtue of its use, offer for sale, and sale of the VAS SHROUD by contributing to the infringement of the patent by others, and by inducing others to infringe the '810 Patent.  On June 11, 2009, Ops-Core filed its Answer to the Complaint.

On June 10, 2009, Ops-Core filed an *ex parte* request for reexamination of the '810 Patent with the United States Patent and Trademark Office ("PTO").  On June 29, 2009, Ops-Core filed a Motion to Stay this action until final resolution of the reexamination proceeding, which Motion was granted on October 6, 2009.  Subsequently, in anticipation of the issue of the reexamination certificate, the Court lifted the stay of this action.  On August 10, 2010, the PTO issued a re-examination certificate, thereby terminating the re-examination proceeding.  A copy of the reexamined '810 Patent is attached as Exhibit N to the Daly Decl. submitted herewith.

## IV.   PERTINENT LEGAL STANDARDS

### A.   Pertinent Legal Standards Re Summary Adjudication

Fed. R. Civ. P. 56(c) provides for summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  A moving party meets the requirement of Rule 56 by showing that no genuine issue of material fact remains.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986), *cert denied,* 484 U.S. 1066 (1988).  Once a movant has met this requirement, the burden shifts to the party resisting the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

---

[2]   Norotos also asserted infringement of United States Patent No. 6,938,276.  However, Ops-Core's infringement of that patent is not the subject of this motion.

*Lobby, Inc.,* 477 U.S. 242, 256 (1986).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest upon mere allegation[s] or denials of his pleading[s]."  *Id.*  Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson,* 477 U.S. at 250. Summary judgment as to material facts which are not genuinely at issue, including liability, is appropriate even if summary judgment is not rendered on the whole action.  Fed. R. Civ. P. 56(d)(1), (2).

> **B.** **Pertinent Legal Standards re Direct Infringement**

To infringe a patent claim, the accused product must meet every limitation of that claim. *Laitram Corp. v. Rexnord, Inc.,*  939 F.2d 1533, 1535 (Fed. Cir. 1991).  The analysis typically requires two separate steps.  First the claims are construed in order to establish their meaning and scope.  *Markman v. Westview Instruments,* 517 U.S. 370, 384 (1996).  Then the claims are compared to the accused product to see if the product meets every limitation of at least one claim.  *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878, 889 (Fed. Cir. 1988), *aff'd.* 926 F.2d 1161 (Fed. Cir. 1991).

## V.   ARGUMENT

> **A.** **Ops-Core's VAS SHROUD and Accompanying Mounting Mechanism Directly Infringe Claim 22 of the '810 Patent.**

Ops-Core's VAS SHROUD and Mounting Mechanism directly infringe Claim 22 of the '810 Patent because the accused product includes each limitation of Claim 22.

> **1.** **The Meaning and Scope of Claim 22**

Interpretation of Claim 22 of the '810 Patent is a "question of pure law . . . amenable to summary judgment."  *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) *cert. denied*, 516 U.S. 987 (1995).  Norotos identifies below the claim terms that should be construed in Claim 22 of the '810 Patent to assist in the infringement analysis.  The claim terms are identified in bold and italics in the table below and are presented along with the proposed meaning and scope of the relevant claim term.  Reasons for the proposed constructions

are given below the table.

| '810 Patent Claim 22 | Proposed Construction |
|---|---|
| A ***shroud plate*** for headgear comprising | An attachment mechanism that allows a headgear, such as a helmet, and a mount to interact in such a way as to support a night vision device. |
| a ***shell*** | An outer component or part of the shroud plate. |
| an ***insert*** | An inner component or part of the shroud plate. |
| ***a lock and a release mechanism***, | A device comprising one or more components used to secure a mount to the shroud plate. |
| wherein the shell extends around at least a portion of the insert and has an external surface that faces away from the headgear when the shroud plate is attached to the headgear, a back surface that faces toward the headgear when the shroud plate is attached to the headgear and a periphery; | The plain meaning of the claim terms here require no construction. |
| wherein the external surface is ***smooth*** with rounded edges and corners at the periphery, such that the shell has no projections on which a shroud line may catch and is shaped to match the contour of the headgear; | Has no projections on which a shroud line may catch. |
| wherein the insert is adapted to | A device used in conjunction with a lock to |

| **'810 Patent Claim 22** | **Proposed Construction** |
|---|---|
| receive a **lock plate**; | secure a mount to the shroud plate. |
| wherein the lock is adapted to secure the lock plate to the insert; and | The plain meaning of the claim terms here require no construction. |
| wherein the release mechanism allows for removal of the lock plate from the insert. | The plain meaning of the claim terms here require no construction. |

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Plaintiff presents below support within the patent itself and the prosecution history for the meaning and scope of the identified claim terms.

    a)      **"Shroud Plate"**

The meaning and scope of "shroud plate" find ample support in the specification in the context of a helmet, one type of headgear.  Embodiments of the invention relate to "helmet attachment mechanisms . . ., and more particularly to a shroud plate which may act as an interface between a helmet and the helmet mount for a night vision device." ('810 Patent at col. 1, lines 7-9.)  "[T]he shroud plate may also be attached to the helmet in any manner sufficient to secure a helmet attachment mechanism to the helmet and support the accompanying helmet mount and night vision device." ('810 Patent at col. 2, lines 46-49.)  Further, "[a] night vision device may be attached to a helmet through a helmet attachment mechanism which acts as an interface between a helmet mount and the helmet." ('810 Patent at col. 1, lines 29-31.)

    b)      **"Shell"**

The meaning and scope of "shell" are consistent with and supported by the specification. Figures 1, 2, and 3 in the specification show that the shell is an outer component or part of the shroud plate.

### c)    "Insert"

The specification fully supports the meaning and scope of "insert."  The insert is shown in the figures as an inner component or part of the shroud plate.  Figures 2 and 3 also illustrate how the shell (13) may relate to the space for the insert (16).

### d)    "A Lock and a Release Mechanism"

The specification supports the meaning and scope of "a lock and a release mechanism." To secure or remove the mount to the shroud plate, "the insert is adapted to receive a lock plate, the lock is adapted to secure the lock plate to the insert, and the release mechanism allows for removal of the lock plate from the insert." ('810 Patent at col. 2, lines 6-9.)  The specification does not limit "a lock and release mechanism" to one integrated with the shroud plate, but states, instead, that "alternate arrangements of the lock and release button are possible." ('810 Patent at col. 4, lines 52-53.)  Nothing in the specification requires a lock and a release mechanism to be a unitary part of and not a separate part of the shroud plate.  Nothing in the specification requires a lock and release mechanism be integral with a unitary body of the shroud.

The doctrine of claim differentiation supports a claim interpretation wherein the lock and release mechanism are not an integral part of the shroud plate.[3]  Claim 13 depends on claim 22 and limits the shell and insert to a single component.  Specifically, claim 13 states: "A shroud plate according to claim 22 wherein the shell and the insert comprise one piece."  To differentiate claim 22 from dependent claim 13, claim 22 should be interpreted as being broader than the shell and insert being a single component.[4]  Thus, the shell and insert may be separate components. Further, Claim 22 uses the same introductory clause for the shell and the insert as it does for the lock and release mechanism — that is, "A shroud plate for headgear comprising a shell, an insert, a lock and a release mechanism."  Accordingly, claim 22 should be interpreted as allowing for

---

[3]  *See Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 910 (Fed. Cir. 2004).  [Holding that "The proper interpretation of the 'housing having two-half shells' limitation is a 'housing having at least two equal or corresponding parts . . .'" ["[T]he presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim."]

[4]  *See Lampi Corp. v. American Power Products, Inc.,* 228 F.3d 1365, 1376 (Fed. Cir. 2000).

the lock and release mechanism to be separate components from the other recited components —
that is, the lock and release mechanism may be separate components from the shell and the
insert.

Allowing for the lock and the release mechanism to be separate components is consistent
with case law.  A device will not be limited to a single unitary body unless the patentee explicitly
disavows a multi-component device.  *See Freni Brembo S.p.A. v. Alco Components*, *Ltd.*, No. 04
C 5217, 2005 U.S. Dist. LEXIS 11714, at * (N.D. Ill. May 31, 2005) ("Nothing in the ordinary
meaning of the term, the context, or the specification precludes the 'single piece' from being
either a monolithic piece or an assembled piece.")  *See also: Graco Children's Prods., Inc. v.
Regalo Int'l LLC*, No. 97-6885, 2000 U.S. Dist. LEXIS 11133, at *14 (E.D. Pa. Aug. 8, 2000)
(holding that a "unitary central hub member" claim term can cover an assemblage of a number of
pieces put together such that they act as a single unit (finding the claim term "unitary central hub
member" to include multiple components acting as one).)

In construing a claim term, "a court will give a claim term the full range of its ordinary
meaning as understood by persons skilled in the relevant art."  *Texas Digital Sys., Inc. v.
Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002) (citation omitted).  "The court may also
consult extrinsic evidence, but only for the purpose of allowing the court to gain an
understanding of the claim terminology."  *Freeman v. Gerber Prods. Co.*, 357 F. Supp. 2d 1290,
1294 (D. Kan. 2005) (citing *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 986 (Fed. Cir.
1995); *Astrazeneca AB, Aktiebolaget Hassle,  KBI-E, Inc., KBI, Inc., and Astrazeneca LP v.
Mutual Pharm. Co.,* 384 F.3d. 1333, 1337 (Fed. Cir. 2004)).  As shown in the prior art cited by
Ops-Core to the Patent Office during reexamination, a person of ordinary skill in the art would
not believe that the lock and release mechanism would necessarily be integral to the shroud plate.
Rather, a person of ordinary skill in the art would understand the ordinary meaning of the claim
term to include a lock and release mechanism that are a separate part of the shroud plate because
such a structure is demonstrated with respect to a mount shown in Figures 2-22 and 2-23
contained in the printed publication entitled "Operator's Manual Night Vision Goggles AN/PVS-

7B (NSN 5855-01-228-0937) (EIC:IPS) and AN/PVS-7D (NSN 5855-01-422-5413) (EIC:N/A)"[5] and submitted to the Patent Office by Ops-Core in the Request for Reexamination. In that reference, the lock is a latch that is used to secure the lock plate to the insert as shown by the curved arrow directing the user to rotate the mount downward until the latch is engaged by the helmet mounted bracket.  (Figure 2-23; 2-56, ¶ 11.)



**Figure 2-23.  Installation of Helmet Mount.**

**Figure 2-22.  Helmet Mount Assembly.**

This figure illustrates that a person of ordinary skill in the art in 2003 when the application that matured into the '810 Patent was filed would understand based on the 1997 reference that the ordinary meaning of "lock" would not require the lock be a unitary part of the shroud plate.  Similarly, the figure illustrating the separate release mechanism in the 1997 reference indicates that a person of ordinary skill in the art in 2003 would understand the ordinary meaning of a release mechanism would not preclude a release mechanism being a separate part from the shroud plate.  (Fig. 2-22; 2-56 ¶ 11.)  Additionally, Ops-Core argued (*see* Request for Reexamination at p. 3) and the examiner accepted (*see* Office Action mailed 03/08/2010 at pp. 2-3), that separate lock and release mechanisms were pertinent to the claims for the present invention.

Nothing in the prosecution history limits the invention from containing separate components not integral to the shroud plate including a lock and a release mechanism.

---

[5]  Published by the United States Departments of the Army, the Navy, and the Air Force and Headquarters, Marine Corps on December 1, 1997.

e)      **"Smooth"**

The proposed meaning of smooth is consistent with and supported by both the specification and the reason for allowance by the Patent Office.  The specification states that the "top surface of the shell may be smooth."  ('810 Patent at col. 3, line 2.)  "[H]aving a smooth surface with rounded edges and corners on the shell ensures that there are no unnecessary edges on which another object, such as a shroud line of a parachute or a dangling tree branch in heavy foliage, may catch."  ('810 Patent at col. 3, lines 4-8.)  The Patent Office agreed during reexamination that "the shell has no projections on which a shroud line may catch," thereby distinguishing the invention from the prior art .  *See* Daly Decl., Exh. M at p. 2.

f)      **"Lock Plate"**

The specification supports the meaning and scope of "lock plate."  "[T]he insert is adapted to receive a lock plate, the lock is adapted to secure the lock plate to the insert" allowing the lock plate to work in conjunction with the lock to secure a mount to the shroud plate.  ('810 Patent at col. 2, line 6-7; *see also* '810 Patent at col. 3, lines 17-19 ("The insert is designed as a bay for a lock plate or adapter plate . . . and functions as the interface between a helmet mount and a helmet.").)  Further, "a durable lock plate ensures a sturdy interface between a helmet mount and a helmet."  ('810 Patent at col. 3, lines 24-26.)

2.      **The VAS SHROUD and Mounting Mechanism Meet the Limitations of Claim 22**

No dispute exists regarding the structure of Ops-Core's VAS SHROUD and that of the Mounting Mechanism.  As demonstrated in the infringement chart below, summary judgment of infringement is appropriate.

| **Claim 22** | **Ops-Core's VAS SHROUD** |
|---|---|
| A shroud plate for headgear comprising | The Ops-Core VAS SHROUD packaging (shown below) shows the VAS SHROUD is an attachment mechanism that attaches to a  helmet to provide an interface between the helmet and a helmet mount used as support for |

| Claim 22 | Ops-Core's VAS SHROUD |
|---|---|
| | "attaching any Night Vision Devices." (*See* Chavez Decl., ¶ 5.) |

Comment: Ops-Core advertises and displays the VAS SHROUD at trade shows with night vision

devices and helmet mounts attached as seen here.  In addition to directly infringing,

the display actively shows purchasers how to directly infringe.

| Claim 22 | Ops-Core's VAS SHROUD |
|---|---|
| | <br><br><br><br>(*See* Prendergast Decl.,¶ 10.) |
| a shell | The Ops-Core VAS SHROUD contains an outer component or part of the shroud plate, as seen on the packaging and the product itself.<br><br><br><br>(*See* Prendergast Decl.,¶ 11.) |
| an insert | The VAS SHROUD contains an inner recessed portion. |
| a lock and a release mechanism, | The lock and release device of Ops-Core's VAS SHROUD system is attached to and secures the NVD Adaptor helmet |

| Claim 22 | Ops-Core's VAS SHROUD |
|----------|----------------------|
| | mount to the shroud plate as seen in the images and installation instructions below.<br><br><br><br>*Release Mechanism*   *Lock Mechanism*<br><br>(*See* Prendergast Decl.,¶11.)<br><br><br><br>*Lock Mechanism & Reference*   *Release Mechanism & Reference*<br><br>**STEP 3:** ATTACH NVD ADAPTER<br><br>Insert and anchor the top of the NVD adapter underneath the top of the bracket as shown. While pressing the adapter's release trigger, push down to snap and lock the adapter in place.<br><br>(*See* Chavez Decl.,¶ 5.)<br><br>The installation instruction indicates that Ops-Core refers to its lock as an anchor for the NVD Adapter. |
| wherein the shell extends around at least a portion of the insert and has an external surface that | The shell of the VAS SHROUD extends around at least a portion of its insert. |

-13-

| Claim 22 | Ops-Core's VAS SHROUD |
|---|---|
| faces away from the headgear when the shroud plate is attached to the headgear, a back surface that faces toward the headgear when the shroud plate is attached to the headgear and a periphery; |   (*See* Prendergast Decl.,¶ 11.)   **STEP 3:** ATTACH NVD ADAPTER  Insert and anchor the top of the NVD adapter underneath the top of the bracket as shown. While pressing the adapter's release trigger, push down to snap and lock the adapter in place.  (*See* Chavez Decl.,¶ 5.) |

| Claim 22 | Ops-Core's VAS SHROUD |
|---|---|
| Comment: The installation illustration above shows that when the VAS SHROUD plate is attached to the headgear, *i.e.* a helmet, the external surface of the shell faces away from the helmet while the back surface is directed towards the helmet.  Finally, the VAS SHROUD contains a periphery.  (*See* below.) ||
| | Periphery of VAS Shroud<br><br>(*See* Prendergast Decl.,¶ 11.) |
| wherein the external surface is smooth with rounded edges and corners at the periphery, such that the shell has no projections on which a shroud line may catch and is shaped to match the contour of the headgear; | The packaging for Ops-Core's VAS SHROUD indicates that the shroud is "snag free for HALO, HAHO and static line" as seen here.[6]<br><br><br><br>(*See* Chavez Decl.,¶ 5.) |
| | <br><br> |

---

[6] "HALO" refers to High Altitude Low Opening parachute jumps, "HAHO" refers to High Altitude High Opening parachute jumps, and "static line" refers to parachute jumps using a static line to open the parachute.

| Claim 22 | Ops-Core's VAS SHROUD |
|---|---|
| | <br>(*See* Prendergast Decl.,¶ 11.) |
| Comment: A visual inspection of the external surfaces of the shell reveals that it has no projections on which a shroud line may catch - that is the VAS SHROUD's shell contains the very point of novelty relied upon by the Patent Office in allowing Claim 22 in the reexamination procedure. | |
| | <br>(*See* Chavez Decl.,¶ 5.)<br>The VAS SHROUD packaging and instructions show it is shaped to match the contour of a helmet. |

| Claim 22 | Ops-Core's VAS SHROUD |
|---|---|
| | Contoured Shroud<br><br>(*See* Chavez Decl.,¶ 5.)<br><br>The VAS SHROUD also makes use of rounded edges and corners at the periphery as seen below.<br><br> Rounded Edges at the Periphery<br><br> Rounded Corners on Periphery of External Surface of Shell<br><br>(*See* Prendergast Decl.,¶ 11.) |
| wherein the insert is adapted to receive a lock plate; | The VAS SHROUD packaging illustrations show the insert is adapted to receive the lock plate located on the bottom surface of the NVD Adapter. |

| Claim 22 | Ops-Core's VAS SHROUD |
|---|---|
| |  |

(*See* Chavez Decl.,¶ 5.)

The packaging instructions also indicate the insert is adapted to receive the lock plate on the NVD Adapter.

(*See* Chavez Decl.,¶ 5.)

The next series of images show how the insert of the VAS SHROUD is adapted to receive the lock plate.

(*See* Prendergast Decl.,¶ 11.)

-18-

| Claim 22 | Ops-Core's VAS SHROUD |
|---|---|
|         wherein the lock is adapted to secure the lock plate to the insert; and | The bottom surface of the NVD Adapter includes a lock plate which the anchor lock for the VAS SHROUD is shaped to secure to the insert as pictured here when the lock is engaged.<br><br><br><br>(*See* Prendergast Decl.,¶ 11.) |
|         wherein the release mechanism allows for removal of the lock plate from the insert. | Pressing the release mechanism disengages the anchor lock allowing removal of the lock plate from the insert.  This image here shows the anchor lock retracted just prior to removing the lock plate from the insert of the VAS SHROUD.<br><br><br><br>(*See* Prendergast Decl.,¶ 11.) |

The VAS SHROUD meets every claim limitation of Claim 22 resulting in literal infringement of the '810 Patent by Ops-Core.

## VI.   <u>CONCLUSION.</u>

For the foregoing reasons, summary judgment should be entered that Ops-Core has infringed the '810 Patent.

Respectfully submitted,


DATED:  October 25, 2010            By /s/ Edward R. Schwartz
                                         Edward R. Schwartz

                                    **BBO #448050**
                                    **CHRISTIE, PARKER & HALE, LLP**
                                    **350 West Colorado Blvd., Suite 500**
                                    **Post Office Box 7068**
                                    **Pasadena, California 91109-7068**
                                    **Phn:  (626) 795-9900**
                                    **Fax:  626-577-8800**
                                    **e-mail:  ers@cph.com**

                                    Attorneys for Plaintiff/Counterdefendant,
                                    Norotos, Inc.


CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 25, 2010.


                                     /s/ Edward R. Schwartz
                                    Edward R. Schwartz

SES PAS904605.6-*-10/25/10 12:20 PM