UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NOROTOS, INC.,

                        Plaintiff,

v.                                                    Civil Action No: 09-CV-10215-NG

OPS-CORE, INC.,

                        Defendant.

## DEFENDANT OPS-CORE, INC.'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Ops-Core, Inc. ("Ops-Core") submits the following memorandum in

opposition to plaintiff Norotos, Inc.'s ("Norotos") motion for summary judgment of infringement

of claim 22 of United States Patent No. 6,751,810 (the "'810 Patent"). As discussed below,

Norotos's motion should be denied because claim 22 cannot be construed to cover an assembly

of the VAS Shroud manufactured by Ops-Core with a helmet mount. Moreover, because all

asserted claims of both the '810 Patent and United States Patent No. 6,938,276 (the "'276

Patent") contain the same limitations as claim 22, Ops-Core's motion for summary judgment of

non-infringement as to all claims should be granted.

## FACTUAL BACKGROUND

The facts material to the parties' cross-motions for summary judgment are largely

undisputed. Claim 22, like all other asserted claims of both the '810 and '276 Patents, requires,

among other elements, "a shroud plate for headgear comprising a shell, an insert, a lock and a

release mechanism . . . wherein the external surface is smooth with rounded edges and corners at

the periphery, such that the shell has no projections on which a shroud line may catch and is

shaped to match the contour of the headgear; wherein the insert is adapted to receive a lock plate[.]"

It is undisputed that Ops-Core's accused product, the VAS Shroud, does not include a lock or a release mechanism. Norotos's motion, therefore, relies solely on the argument that an assembly of the VAS Shroud with a helmet mount infringes claim 22. *See* Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Partial Summary Adjudication of Infringement of U.S. Patent No. 6,751,810 ("Norotos Motion") at 4. Such an assembly, however, fails to meet all the limitations of the claim. Accordingly, Norotos's motion for summary judgment should be denied and Ops-Core's motion for summary judgment of non-infringement of all asserted claims should be granted.

## ARGUMENT

As discussed below and in Ops-Core's motion for summary judgment, an assembly of the VAS Shroud and a helmet mount cannot infringe claim 22 because (1) the claim requires that the shell, insert, lock and release mechanism all be located on a single structure, a "shroud plate," and that structure cannot include a mount arm; (2) the accused assembly would not meet all the limitations of claim 22 because (a) it would not be "smooth" with "no projections on which a shroud line may catch" and (b) it would lack an insert "adapted to receive a lock plate"; and (3) the assembly of a helmet mount to the VAS Shroud is supported by prior art which Norotos has differentiated from the '810 Patent in reexamination arguments.

## I.  Claim 22 Should Be Construed to Require That the Shell, Insert, Lock and Release Mechanism Be Located on a Single Structure That Does Not Include a Mount Arm

In order to decide the infringement issues presented by the parties' cross-motions for summary judgment, the Court must first construe the disputed claim terms. *See, e.g., Freedman*

*Seating Co. v. Amer. Seating Co.*, 420 F.3d 1350, 1356-57 (Fed. Cir. 2005). Ops-Core requests

that the Court construe the disputed terms of claim 22 as follows:

| Claim Term | Proposed Construction |
|---|---|
| Shroud plate | A comparatively flat structure, thinner than it is wide or long, that may be composed of one or more integrally related pieces, but that does not include an arm-shaped structure |
| Comprising | Including or containing |
| Insert | A part or component of a shroud plate that permits insertion of a lock plate |
| Lock | A mechanism that locks the shroud plate to a helmet mount, and that is located on the shroud plate and not on the helmet mount |
| Release mechanism | A mechanism that releases the lock attaching the shroud plate to a helmet mount, and that is located on the shroud plate and not on the helmet mount |
| Smooth with rounded edges and corners at the periphery, such that the shell has no projections on which a shroud line may catch | Having no sharp edges or projections such as hook-shaped portions |
| Adapted to receive a lock plate | Capable of receiving a lock plate, without any other structure precluding insertion of the lock plate |

Ops-Core's  proposed constructions are supported by the ordinary meanings of the claim

terms, the specification and prosecution history, as discussed below.[1]

**A.    "Shroud Plate"**

The term "plate" has consistently been construed to mean a flat, comparatively thin piece

of material, of more or less uniform thickness. *See, e.g., Leoutsakos v. Coll's Hosp. Pharmacy,*

---

[1] The remaining terms of claim 22 either are not disputed for purposes of the summary judgment motions or require no construction.

*Inc.*, 95 Fed. Appx. 835, 2004 WL 1010162, *3 (Fed. Cir. May 4. 2004) (noting dictionary definition of "plate" as "a perfectly flat sheet of material of uniform thickness throughout" and finding that claim limitation "planar plate member" did not cover a "largely open frame comprised of cylindrical tubes"); *Neles-Jamesbury, Inc. v. Fisher Controls Int'l, Inc.*, 989 F. Supp. 393, 397 (D. Mass. 1998) (noting that "[t]he ordinary meaning of the term 'plate' is a structure that is thinner than it is wide or long and that is generally flat and solid" and construing term in patent at issue to mean "a structure that is thinner than it is wide or long and that may be flat, curved or twisted and perforated such as a screen or net but that is not a tube"); *Briggs & Riley Travelware, LLC v. Paragon Luggage, Inc.*, No. 01-3448, 2002 WL 3181, *3 (S.D.N.Y. December 13, 2002) (noting dictionary definition of "plate" as a "flat, comparatively thin, usually rigid sheet, slice, leaf, or lamina of metal or other substance, of more or less uniform thickness and even surface").

Accordingly, the term "shroud plate" should be construed to mean a comparatively flat structure, thinner than it is wide or long. While such a structure may, for example, be curved to fit the shape of a helmet or other headgear and may have holes or perforations (*see Neles-Jamesbury, Inc.*, 989 F. Supp. at 397), it cannot include an arm-shaped structure such as a helmet mount.

### B.      "Comprising"

The term "comprising" is a term of art in the patent context, and is generally construed to mean "including" or "containing." *See, e.g., Amgen, Inc. v. Hoffman-La Roche Ltd.*, 494 F. Supp. 2d 54, 68-69 (D. Mass. 2007); *Orion IP, LLC v. Xerox Corp.*, No. 607-138, 2008 WL 3914891, *6 (E.D. Tex. August 21, 2008) (citing D. Chisum, CHISUM ON PATENTS §8.06[1][b][ii][A]).

The shroud plate must therefore "comprise," i.e. contain or include, the shell, insert, lock and release mechanism.

Moreover, the limitation of "a shroud plate for headgear *comprising* a shell, an insert, a lock and a release mechanism" requires that the shroud plate comprise, i.e. contain or include, those four elements simultaneously. An infringing device must fulfill all requirements of claim 22 at a point in time when it comprises all four elements, not as separate assemblies fulfilling some requirements in one configuration and other requirements in another.

C.     "Insert"

This term should be construed to mean a part or component of a shroud plate that permits insertion of a lock plate. The specification states that "[t]he insert is designed as a bay for a lock plate or adapter plate." *See* '810 Patent col. 3 ll. 17-19. The "shroud plate" must include an area ("insert") able to receive a lock plate.

D.     "Lock"

This term should be construed to mean a mechanism that locks the shroud plate to a helmet mount, and that is located on the shroud plate and not on the helmet mount. Norotos argues that "whether the 'lock' and 'release mechanism' elements are located with the 'insert' or located with the 'lock plate' makes no difference in the engagement." *See* Norotos's Opposition to Ops-Core's Motion for Summary Judgment (Docket No. 38) at 17. While this may be true mechanically, Norotos's suggested alternate embodiment, in which the lock is part of the lock plate, is not covered by claim 22. Consistent with the claim language and written description, all of the patent drawings show a shroud plate consisting of a single structure, with an insert at the center and a lock and release mechanism or button located at the top and bottom of the shell, as in Figure 2 of the '810 Patent.

As explained in the specification, the embodiment shown in Figure 2 (at right) includes a shroud plate (10) that comprises a shell (13), an insert (16), a lock (18) and a release mechanism or release button (26). *See* '810 Patent col. 2 ll. 30-36, col. 3 ll.15-16, 37-56. Note that the "shroud plate" (10) is a different entity from the lock plate (17). The other drawings likewise show the insert, lock and release mechanism as located on the shroud plate and not on a detachable mount arm or other device. In fact, there is nothing in the specification to support the construction of any of the claims to cover an embodiment where the lock is part



Shroud plate (10) from FIG. 2 of '810 patent

Lock plate (17) from FIG. 9 of '810 patent

of the lock plate (17) instead of the shroud plate (10), or to convey to a person of ordinary skill in the art that the inventor of the '810 Patent had possession of such an embodiment of the invention. If Norotos's proposed construction were accepted, claim 22 would fail to meet the written description requirement of 35 U.S.C. section 112 and 37 CFR 1.75(d)(1)[2] and would be invalid. *See ICU Med. Sys., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376-77 (Fed. Cir. 2009); *Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005).[3]

---

[2]"The claim or claims must conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description." 37 CFR 1.75(d)(1).

[3]To the extent that claims are ambiguous, they should be construed to preserve validity if possible. *See ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed. Cir. 1984).

E.      **"Release mechanism"**

This term should be construed to mean a mechanism that releases the lock attaching the shroud plate to a helmet mount, and that is located on the shroud plate and not on the helmet mount.  The arguments made by Norotos and accepted by the examiner during reexamination narrow the claim to require that the lock and release mechanism be located on the same structure as the shell, not on an attached mount arm.

During reexamination of the '810 Patent, Norotos sought to distinguish its invention over the prior art cited by Ops-Core, including the US HMA Operator's Manual. *See generally* Declaration of Thomas J. Daly in support of Norotos's motion for summary judgment (Docket No. 42) ("Daly Dec."), Exhibit J. The Operator's Manual discloses a helmet mounting bracket that does not incorporate a lock or release mechanism, but instead has an opening for insertion of a helmet mount that includes these elements, as in the drawing below:



Figure 2-22.  Helmet Mount Assembly.

*See* Daly Dec., Exhibit F at 29.

In response to the examiner's initial rejection of all claims of the '810 Patent, Norotos

modified claim 1 and argued that it was patentable over the US HMA Operator's Manual

because it required the release button to be located on the bottom edge of the shell:

> [H]aving the release button on the bottom edge allows the lock to
> be located on the top edge of the insert. As such, to mount a lock to
> the shroud plate, a user can insert a lower portion of the lock plate
> into the lower edge of the insert using a relatively small force and
> then snap the upper portion of the lock plate against the lock to
> attach the lock plate to the shroud plate using a relatively large
> force. Since the user uses the larger force to snap the top portion of
> the lock plate into the shroud plate in a motion *away* from the
> user's face, the user is less likely to smash the night vision goggles
> attached to the lock plate into his or her face if the lock plate does
> not engage the insert than if the lock were located on the bottom
> edge of the insert instead of the release button requiring a large
> force *toward* the user's face to snap the lock plate into the insert.

*See* Daly Dec., Exhibit J (November 18, 2009 Amendment) at 12 (emphasis in original).

The examiner accepted these arguments in allowing the amended claims:

> The patent owner argued that having a release button *centrally
> located along the bottom edge of the shell* is not an obvious design
> choice because such location of the release button allows the
> release button to be protected by the structure of the mount and/or
> by the night vision goggles themselves from accidental
> disengagement.

*See* Daly Dec., Exhibit K (March 8, 2010 office action) at 12 (emphasis added).

Statements made by a patent owner to distinguish prior art during reexamination, like

statements made during the original prosecution, may narrow the scope of a claim. *See Spectrum

Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1998) (affirming summary

judgment of non-infringement where patent owner's proposed claim construction had been

disclaimed during reexamination). Because Norotos was able to distinguish its invention over the

US HMA Operator's Manual only by arguing that the release mechanism was located on the

bottom edge of the shell, Norotos relinquished any possible interpretation of the claims to allow this element to be located on a separate device. *See Spectrum Int'l, Inc.*, 164 F.3d at 1379.[4]

If claim 22 were construed to cover an assembly of a shell or plate (such as the VAS Shroud) with a helmet mount that contained the lock and release mechanism, the claim would be anticipated by the US HMA Operator's Manual, which discloses just such an assembly. Even if the plain meaning of the claim language and specification did not clearly require a single structure, any ambiguity should be resolved in favor of an interpretation that preserves the validity of the claim. *See ACS Hosp. Sys., Inc.*, 732 F.2d 1572, 2577 (Fed. Cir. 1984).

**F.      "Smooth with rounded edges and corners at the periphery, such that the shell has no projections on which a shroud line may catch"**

In rejecting the original claims of the '810 patent, the examiner cited as prior art the US HMA Operator's Manual, which discloses a helmet mounting bracket as shown in the diagram below:



Diagram #2:

---

[4] The USHMA Operator's Manual and other prior art do not, as Norotos argues, support a *broader* construction of claim 22 by showing that a person of ordinary skill in the art would have understood based on these references "that the ordinary meaning of 'lock' would not require the lock be a unitary part of the shroud plate." *See* Norotos Motion at 8-9. Norotos points to nothing in any of these references to suggest that "lock" had a special meaning in the relevant art at the time of the invention. Moreover, Norotos's reliance on *Texas Digital Systems, Inc. v. Telegenics, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002) for the proposition that "a court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art" (Norotos Motion at 8) is misplaced. *See Phillips*, 415 F.3d at 1320 (finding that *Texas Digital*'s approach "improperly restricts the role of the specification in claim construction").

In finding the claims anticipated by the prior art, the examiner stated:

> Since the claim does not specifically define a part/dimension of the shell that is smoothed and it does not require the *entire* outer/exterior surface of the shell to be smooth, but merely recites, "the shell . . [.] has a smooth surface with rounded edges and corners" . . . [t]herefore, the examiner defines a surface of the shell as circled in the diagram #2 above as the smooth surface as claimed. This surface portion of the shell is clearly a smooth surface with rounded edges and corners and without any projection.

*See* Daly Dec., Exhibit K (March 8, 2010 office action) at 9, 11 (emphasis in original).

A smooth surface with rounded edges was, therefore, not sufficient to differentiate the invention of the '810 patent from the prior art. To overcome the prior art, Norotos proposed new claims 21 and 22 with additional wording to differentiate them from the prior art cited for the rejection of claim 1:

> . . . wherein the shell extends around at least a portion of the insert and has an <u>external surface that faces away from the headgear when the shroud plate is attached to the headgear, a back surface that faces toward the headgear when the shroud plate is attached to the headgear and a periphery; wherein the external surface is smooth with rounded edges and corners at the periphery, such that the shell has no projections on which a shroud line may catch.</u>

*See* Daly Dec., Exhibit J (November 18, 2009 Amendment) at 5 (emphasis added).

Norotos argued that amended claim 22 was patentable over the prior art, particularly the US HMA Operator's Manual, because "the shell has *no projections* on which a shroud line may catch." *Id.* at 13. According to Norotos's argument, to overcome the patent examiner's objections, the entire external surface must be free of projections.



Norotos ignores this distinction when it argues that the VAS Shroud infringes Claim 22 in part because it "makes use of rounded edges and corners at the periphery" as demonstrated in the photograph on the previous page. *See* Declaration of Jonathon R. Prendergast (Docket No. 45), ¶11 and Exhibit G. Only a few areas are shown with rounded edges and, most importantly, the photograph shows only a portion of the accused assembly as it lacks a lock or release mechanism. According to Norotos, the lock and release mechanism must be provided by attaching a helmet mount that includes these elements. The helmet mount in the accused assembly, however, *cannot* provide these elements because it has the "sharp edges and/or hook-shaped portions" that would violate the claim limitations that there be "no projections on which a shroud line may catch," as shown in the photographs below:



**VAS SHROUD and US HMA Helmet Mount**

**1997 US HMA Mounting Bracket and Helmet Mount**

*See* Declaration of David Rogers, dated November 24, 2010 ("Rogers Dec."), ¶¶2-3 and Exhibits 1-2.

### G.     "Adapted to receive a lock plate"

This term should be construed to mean that the insert is capable of receiving a lock plate, and is not obstructed by a helmet mount or other structure. The plain meaning of the claim

language is supported by the specification of the '810 Patent, which is "'the single best guide to the meaning of a disputed term.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) and *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 1994)). The written description reiterates that "[t]he present invention, therefore, provides for a shroud plate for headgear comprising a shell, an insert, a lock, [and] a release mechanism wherein the shell extends around at least a portion of the insert[.]" *See* '810 Patent col. 2, ll. 1-4. The written description further summarizes the invention as "a shroud plate to *act as an interface* between a helmet mount and a helmet." '810 Patent col. 1, ll. 5-9, 59-61 (emphasis added). In order to act as an "interface" between the helmet mount and the helmet, the shroud plate cannot *include* either a helmet mount or a helmet. Similarly, the lock plate cannot be part of the "shroud plate" because the "shroud plate" has an "insert" that is "adapted to receive a lock plate". The simple construction that follows from these relationships is shown below:



The Shroud Plate is an interface between the Helmet and the Helmet Mount

The Shroud Plate is adapted to receive the Lock Plate

Therefore the Shroud Plate receives the Lock Plate which is an essential part of the Helmet Mount.

Accordingly, the helmet mount cannot be a part of the shroud plate of Claim 22. This, however, is the basis of Norotos's argument that the VAS Shroud, which has no lock or release mechanism, infringes the claim. In order for the VAS Shroud to "comprise" a lock and release mechanism, the term "shroud plate" would need to be construed to include a helmet mount of the type disclosed in the US HMA Operator's Manual. Such a helmet mount cannot, however, provide the lock and release mechanism because the helmet mount cannot be part of the "shroud plate". In simple terms, the lock and release mechanism must be on the shroud plate without involving the helmet mount because the shroud plate must still be able to receive the helmet mount, as shown in the photographs below:

  

| 1. The Norotos "Shroud Plate" of the '810 patent, shown above, is able to receive the lock plate of the night vision Mount. Because the "Shroud Plate" has a lock and release mechanism, the Mount is greatly simplified. | 2. Ops-Core's VAS Shroud has no lock or release mechanism so it cannot receive or secure the lock plate. It lacks two of the required components and cannot perform the functions of the Norotos "Shroud Plate" therefore it cannot infringe. | 3. Norotos argues that the VAS Shroud becomes an infringing assembly when the HMA Helmet Mount is attached as shown above. Incorporating the Mount however means that the assembly cannot receive a lock plate, a required function of the shroud plate in Claim 22. |

*See* Rogers Dec., ¶¶4-6 and Exhibits 3-5.

**H.   There Is No Presumption Against Interpreting Claim 22 to Require a Unitary Structure**

In an effort to avoid the plain meaning of claim 22, Norotos argues that the claim should be construed to allow the lock and release mechanism to be "separate components" because "[a] device will not be limited to a single unitary body unless the patentee explicitly disavows a multi-component device." Norotos Motion at 8.

In support of this argument, Norotos cites two unreported cases from other jurisdictions, neither of which even purports to stand for such a general principle of claim construction. In *Freni Brembo, S.p.A v. Alcon Components, Ltd.*, No. 04-5271, 2005 WL 1377858 (N.D. Ill. May 31, 2005), the court agreed with the plaintiff that the term "single part" meant "one piece" and did *not* include assembled pieces. 2005 WL 1377858, **2-3. In *Graco Children's Products v. Regalo International LLC*, 2000 WL 1123260, **3-4 (E.D. Pa. August 8, 2000), the court construed the claim limitation of a "unitary central hub member" to include a hinged structure assembled from more than one component. The parties in that case did not, however, dispute that the hub member could be more than one piece, only whether it could or could not fold. *See* 2000 WL 1123260, **3-4 ("Regalo contends that the '437 Patent requires a unitary central hub member that may be composed of several pieces but *acts as one piece, or a unit, and does not fold.*") (emphasis added). Norotos cites no authority suggesting that there is any general presumption against construing claims to require a unitary structure; rather, this determination, like other issues of claim construction, simply depends on the claim language and other intrinsic evidence. As discussed above, the language of claim 22, read in light of the specification and prosecution history, requires construction of the term "shroud plate" as a single structure comprising a shell, insert, lock and release mechanism.

### I.      The Doctrine of Claim Differentiation Does Not Require Construction of Claim 22 to Cover an Assembly of a Shroud and Helmet Mount

Finally, the doctrine of claim differentiation does not, as Norotos argues, require that claim 22 be construed to cover an assembly of a shroud and helmet mount in order to differentiate it from dependent claim 13. While claim differentiation generally prohibits reading limitations from a dependent claim into an independent claim, so as to render the dependent claim superfluous, the doctrine "cannot broaden claims beyond their original scope." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-81 (Fed. Cir. 2006). *See ICU Med. Sys., Inc.*, 558 F.3d at 1376 (claim differentiation is "not a rigid rule but rather is one of several claim construction tools"); *Bionx Implants, Inc. v. Innovasive Devices, Inc.*, 45 F. Supp. 2d 75, 78 (D. Mass. 1999) (Gertner, J.) (finding that defendant's proposed construction of asserted claim would not render second claim superfluous).

Claim 13 requires "[a] shroud plate according to claim 22 wherein the shell and the insert comprise one piece." *See* Norotos Motion at 7. Construing claim 22 to require a single structure would not render claim 13 superfluous because the shell, insert, lock and release mechanism may all be located on a single structure *without* the shell and insert being one piece. In the embodiment of the invention manufactured by Norotos, for example, the insert, like the lock and release button, is a separate piece that is permanently attached to and is integral with the shroud plate:



*See* Rogers Dec., ¶9 and Exhibit 8.

The specification further explains that the insert may be incorporated into the shell in several different ways, including but not limited to the shell and the insert being one piece:

> An exemplary embodiment of the present invention further comprises an aluminum insert or receiving plate 16. The insert 16 could also be made of titanium or other suitable materials. The insert 16 is designed as a bay for a lock plate or adapter plate 17 (see Fig. 9) and functions as the interface between a helmet mount and a helmet 12. *The shroud plate 10 may comprise an insert 16 that is integral with a shell 13 essentially making the plate one piece. The shroud plate 10 may comprise two integrally related pieces, the shell 13 and the insert 16, to optimize weight and durability.* A lightweight shell minimizes the weight a user must bear while a durable lock plate ensures a sturdy interface between a helmet mount and a helmet. However, it is also possible that the shroud plate 10 may be one piece made from one material, for example all nylon or all aluminum.

'810 Patent col. 3 ll. 15-29 (emphasis added). The specification thus confirms that dependent claim 13, in which the shell and insert comprise "one piece," is narrower than independent claim 22, in which the shell and insert may comprise "two integrally related pieces." Accordingly, there is no need to broaden the scope of claim 22, as Norotos proposes, in order to differentiate it from claim 13.

## II.  Even if a Single Structure Is Not Required, the Assembly of the VAS Shroud and a Helmet Mount Does Not Infringe

Because claim 22 requires a shroud plate consisting of a single structure that includes a shell, insert, lock and release mechanism, the VAS Shroud in combination with a helmet mount does not infringe. Even if the claim were held to cover a combination of the VAS Shroud and a helmet mount, however, such an assembly still would not infringe because it would not meet all the claim limitations.

**A.      The Accused Assembly Is Not "Smooth" With "No Projections"**

Claim 22 requires a shroud plate "wherein the external surface is smooth with rounded edges and corners at the periphery, such that the shell has no projections on which a shroud line may catch." The specification emphasizes the absence of projections as a feature distinguishing the invention from the prior art:

> [P]revious helmet attachment mechanisms have comprised sharp edges and/or hooked shaped portions which may interfere with or even seriously injure a user. For instance, a hook portion may catch the shroud line of an opening parachute, cutting the line or violently jerking the user's head and neck.

'810 Patent, col. 1, ll. 39-44.

In the reexamination of the '810 Patent, Norotos argued that amended claim 22 was patentable over the prior art, particularly the US HMA Operator's Manual, because of the absence of projections:

> [R]ather than having a smooth surface, the shroud plate taught by the US HMA reference has projections, such as the "keepers" projecting from a side edge of the shroud plate, that could snag a shroud line and pose a serious safety threat to a user of the mounting bracket. As such, the US HMA reference does not teach a shell having "a smooth surface with rounded edges and corners at the periphery, such that the shell has *no projections* on which a shroud line may catch."

*See* Daly Dec., Exhibit J (November 18, 2009 Amendment) at 13 (emphasis in original).

The examiner found this argument persuasive in distinguishing claim 22 over the prior art:

> Claims 21 and 22 are allowed because the art of record, considered alone or in combination, neither anticipates nor renders obvious a shroud plate for headgear comprising a shell, an insert, a lock and a release mechanism, . . .wherein the external surface is smooth with rounded edges and corners at the periphery, *such that the shell has no projections on which a shroud line may catch . . . .*"

*See* Daly Dec., Exhibit K at 10 (emphasis in original).

When a helmet mount is attached to the shroud plate, the resulting assembly is no longer "smooth with rounded edges and corners at the periphery, such that the shell has no projections on which a shroud line may catch." The assembly instead has the "sharp edges and/or hook-shaped portions" that the specification describes as characteristic of the prior art, as shown in the photograph below:



**VAS Shroud with US HMA Helmet Mount**

*See* Rogers Dec., ¶7 and Exhibit 6.

### B.   The Accused Assembly Does Not Include an Insert "Adapted to Receive a Lock Plate"

The assembly of the VAS Shroud with a helmet mount also fails to meet the limitation that the insert be "adapted to receive a lock plate." This limitation is illustrated by Figures 2 and 9 of the patent at right, which show the insert as integral with the shroud and capable of receiving a separate lock plate.



Shroud plate (10) from FIG. 2 of '810 patent

Lock plate (17) from FIG. 9 of '810 patent

When a helmet mount is attached to a shroud plate such as the VAS Shroud, however, the resulting assembly no longer has an insert "adapted to receive a lock plate" because the mount precludes a lock plate from being attached to the insert, as shown in the photograph below:



.

*See* Rogers Dec., ¶8 and Exhibit 7.

Therefore, even if claim 22 could hypothetically cover an assembly rather than a single structure, it does not cover the accused assembly of the VAS Shroud with a helmet mount because such an assembly lacks the required ability to receive a lock plate.

### III. The assembly of a helmet mount to the VAS Shroud is supported by prior art which Norotos has differentiated from the '810 Patent in reexamination arguments

Norotos claims that Ops-Core asserted conflicting interpretations of the claim language in its successful effort to have the patents-in-suit reexamined. However, Ops-Core has been consistent in arguing that an adapter plate such as the VAS Shroud mounted to a helmet to facilitate the attachment of a mount for a night vision device is well known in the art and was documented at least as early as the 1997 US HMA Operator's Manual. When the Patent and Trademark Office examined the additional prior art cited by Ops-Core, all of the original claims of both the '810 and the '276 patent were rejected.

The VAS Shroud is an embodiment of the helmet mounting bracket disclosed in the US HMA Operator's Manual, as shown in item 44 in the drawings below and the upper photograph on the right:

**Figures 2-22 and 2-23 from Operator's Manual, 1 December 1997 (with added reference numbers):**



Figure 2-22. Helmet Mount Assembly.



Figure 2-23. Installation of Helmet Mount.



Photo of Helmet Mounting Bracket with Helmet Mount as described in 1997 US HMA Operators Manual (left).



Photo of Ops-Core VAS SHROUD with US HMA Helmet Mount which has the same features and functions as the US HMA above.

*See* Rogers Dec., ¶¶2-3 and Exhibits 1-2.

The examiner's rejection of all claims based on the prior art confirms that the '810 patent cannot be construed to cover products with the same features as the prior art US HMA Operator's Manual. Norotos states that it was "ultimately able to overcome the anticipation rejection of claim 1, but did so without amending the language cited above and without

otherwise limiting the shroud plate to be only a monolithic piece." However, Norotos was

required to amend claim 1 as follows:

> A shroud plate for headgear comprising a shell, an insert, a lock
> and a release [mechanism] <u>button</u> wherein the shell extends around
> at least a portion of the insert and has a smooth surface with
> rounded edges and corners and is shaped to match the contour of
> the headgear, the insert is adapted to receive a lock plate; the lock
> is adapted to secure the lock plate to the insert; [and] the release
> [mechanism] <u>button</u> allows for removal of the lock plate from the
> insert, <u>and the release button is centrally located at a bottom edge</u>
> <u>of the shell.</u>

*See* Daly Dec., Exhibit L (April 26, 2010 Amendment) at 2 (emphasis in original).

It is clear from the statements made by the Examiner that the release mechanism was

understood to be a part of the shroud plate and that the critical location of the release button

relative to the "shell" (located along the bottom edge of the shell) provided unique and

unanticipated benefits. *See* Daly Dec., Exhibit K (March 8, 2010 Office Action) at 12.

With regard to Claim 22, the Examiner stated:

> Patent owner further argued that the US HMA fails to disclose an
> external surface of the shell is smooth with rounded edges and
> corners at the periphery, such that <u>the shell has no projection</u> on
> which a shroud line may catch because the shroud plate of US
> HMA has projections, <u>such as the "keepers" projecting from a side</u>
> <u>edge of the shroud plate</u> (see page 3, paragraph 2 of Remarks).
> The Examiner agrees.  Accordingly, claims 21 and 22 are found
> allowable over US HMA and the other prior art of record.

*See* Daly Dec., Exhibit M at 2 (emphasis added).

The photographs below further demonstrate that the Vas Shroud is similar to the helmet

mounting bracket disclosed in the US HMA Operator's Manual, which Norotos has argued is not

the same as the "shroud plate" of the '810 patent.

**'810 Shroud Plate**



Lock

Insert

Shell covering projections such as keepers

Push button centrally located along bottom edge

**'810 Shroud Plate**



"keepers"

**US HMA**

**US HMA and VAS SHROUD**

No push button centrally located along bottom edge;
No lock, no release mechanism;
No shell covering projections such as the "keepers" on which a shroud line may catch



"keepers"

**VAS SHROUD**



*See* Rogers Dec., ¶¶ 9-12 and Exhibits 8-11.

Norotos amended its claims and overcame the examiner's objections by differentiating the invention of the '810 Patent from the prior art. Because Norotos's proposed construction of claim 22 to cover the VAS Shroud would also cover the prior art, thus rendering the claims

invalid, the Court should reject that construction and should construe the claims as proposed by Ops-Core.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Norotos's motion for summary judgment of infringement of Claim 22 of the '810 Patent and should grant Ops-Core's motion for summary judgment of non-infringement of all asserted claims of both the '810 and '276 Patents.

Dated: November 24, 2010              Respectfully submitted,

**OPS-CORE, INC.**,

By its attorneys,

/s/ David S. Godkin
David S. Godkin (BBO#196530)
Anne Marie Longobucco (BBO#649299)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA 02210
617-307-6100
godkin@birnbaumgodkin.com
longobucco@birnbaumgodkin.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on the above date.

/s/ David S. Godkin
David S. Godkin