UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NOROTOS, INC.,<br><br>          Plaintiff,<br><br>     vs.<br><br>OPS-CORE, INC.,<br><br>          Defendant.<br><br>AND RELATED COUNTERCLAIM. | Case No. 1:09-CV-10215-NG<br><br>Hon. Nancy Gertner |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT**

**(LEAVE TO FILE GRANTED ON DECEMBER 1, 2010)**

In its opposition brief, Ops-Core attempts for the first time to set forth its explanation for its interpretation of claim 22 of the '810 Patent. Ops-Core's asserted interpretation is based upon wishful thinking. Indeed, Ops-Core departs from the plain meaning of the claim language by introducing negative limitations and site specific conditions that are not found anywhere in the claim language itself, the specification of the '810 Patent, or its prosecution history.

The Ops-Core claim interpretation is not based upon the language of claim 22 itself. Ops-Core carefully leaves out, ignores, or contorts the language of claim 22 when referring to the claim so as to distort the meaning of the claim. Consideration of the actual language of claim 22 in its entirety shows that Ops-Core's arguments are a distortion of what the claim states.

The Ops-Core interpretation is not based upon the specification of the '810 Patent. While the '810 Patent does describe and show an embodiment where the shell, insert, lock and release mechanism are all located on a single structure, the case law overwhelmingly holds that claims are not normally to be limited to the preferred embodiment of the specification. Nothing in the

specification of the '810 Patent states that these components must be located on a single structure. Rather, the specification speaks in terms of an "interface" or "attachment mechanism" and makes it clear that it is the presence of the components that is important rather than their location in any particular or single structure.

The Ops-Core interpretation is certainly not based upon the prosecution history, particularly the prosecution history of the reexamination of the '810 Patent. Ops-Core makes misleading assertions about the prosecution history, unaccompanied by any citation to the record. When Ops-Core does cite to the record of the reexamination, it does so with respect to statements made regarding a claim other than claim 22, the claim at issue in the present motions. Indeed, the statements concern a claim that has not been asserted against Ops-Core in this case, and language in that claim that is not found in claim 22.

## I.     OPS-CORE DELETES, IGNORES AND CONTORTS THE ACTUAL LANGUAGE OF CLAIM 22 OF THE '810 PATENT TO ARGUE AGAINST ITS INFRINGEMENT.

### A.     Ops-Core Deletes Part Of The Actual Language Of Claim 22 While Quoting It In An Effort To Distort The Meaning Of That Claim.

Ops-Core repeatedly asserts that claim 22 of the '810 Patent requires "a shroud plate for headgear comprising a shell, an insert, a lock and release mechanism . . . wherein the external surface is smooth . . .." *See, e.g.,* pgs. 1 and 17 of Ops-Core's Opposition. It then argues that because the accused assembly includes a helmet mount, it cannot infringe because a helmet mount is not "smooth . . .." However, claim 22 actually states: "A shroud plate for headgear comprising a shell, an insert, a lock and release mechanism, wherein the shell extends around at least a portion of the insert and has an external surface . . . wherein the external surface is smooth with rounded edges and corners at the periphery, such that the shell has no projections on which a shroud line may catch . . .." Thus, considered in proper context, claim 22 does not require that the "shroud plate" (the entire assembly) be "smooth," only that the external surface of the shell portion of that assembly be "smooth."

The other portions of the assembly, in accordance with claim 22, need not be "smooth." This is the plain import of the actual claim language. It is also further illustrated by claim 14, dependent from claim 22, which adds the further limitation that "the top surface of the lock is contoured to match that of the shell." If claim 22 already required that all the elements of the shroud plate be "smooth," claim 14 would be unnecessary. Thus, Ops-Core's entire argument regarding the projections and edges on the helmet mount, *see* pgs. 9-11 and 17-18 of Ops-Core's Opposition, is based upon a distortion and misrepresentation of the claim language.

Similarly, Ops-Core argues that "the entire external surface must be free of projections." *See*, pg. 10 of Ops-Core's Opposition. Ops-Core then points to various projections on the helmet mount. As noted above, this argument is based on the inaccurate assertion that claim 22 requires that the entire assembly, rather than just the external surface of the shell, be "smooth."

However, Ops-Core also points to the "keepers" on its VAS Shroud, *see* pg. 22 of Ops-Core's Opposition, as if the mere presence of any projections on the shell will avoid infringement. This further assertion is promoted by ignoring certain language of claim 22. Claim 22 does not say that the shell should have no projections, it says it should have no projections "on which a shroud line may catch." Ops-Core is very careful not to say that a shroud line may catch on the "keepers" on its VAS Shroud. Even the Declaration of David Rogers submitted with Ops-Core's Opposition merely says that Exhibit 11 shows "a shroud line across the helmet."

While the beveled ends and rounded edges of the VAS Shroud "keepers" show that a shroud line would not catch on the external surface of the shell of the VAS Shroud, a shroud line can be held in place against even the smoothest structure and Ops-Core would like to imply that catching is possible. Ops-Core does not state that catching is possible, nor does it present any evidence that catching is possible, because this would fly in the face of its own advertising and promotion. The Ops-Core press release introducing the VAS Shroud states: "It has no sharp edges or protrusions to snag, and is snag free for HALO, HAHO or static line use." *See* Ex. C to Prendergast Decl. Similarly, the packaging for the VAS Shroud states: "Snag free for HALO,

HAHO and static line." *See* Ex. D. to Chavez Decl. For the safety of the users, one would hope that these statements are true. It is certainly the case that Ops-Core has not presented any evidence to contradict these statements, nor the positive evidence introduced by Norotos that the VAS Shroud shell does not have any projections that a shroud line can catch on. *See* ¶ 11 of Prendergast Decl. Once again, Ops-Core has built an argument on a distortion of claim 22.

### B.     Ops-Core Contorts The Actual Language Of Claim 22.

Ops-Core primarily argues that it avoids infringement because claim 22 of the '810 Patent requires that the shell, insert, lock and release mechanism must all be located on a single structure. *See* p. 2 of Ops-Core's Opposition. However, eventually Ops-Core concedes, that all of these elements are located on a single structure once a helmet mount is placed in its VAS Shroud. *See* pg. 11 of Ops-Core's Opposition. Thus, Ops-Core then argues that once the helmet mount is in place, the VAS Shroud no longer has an "insert adapted to receive a lock plate." This is, in essence, an argument that claim 22 incorporates a specific timing requirement — that is, Ops-Core is arguing that claim 22 requires that the shell, insert, lock and release mechanism must all first be located on a single structure before a lock plate is inserted into the insert.

The essence of Ops-Core's argument is obscured somewhat by its failure to discuss that the helmet mount it shows facing away and inserted into the VAS Shroud in the far right photo on page 13 of its brief has been attached to the VAS Shroud by placing the lock plate on that mount into the VAS Shroud. That this style of mount includes a lock plate (much like the one shown facing outward in Ops-Core's photo) is shown in Ex. G to the Prendergast Declaration (top photo, second page). Accordingly, rather than showing that the VAS Shroud does not have an insert portion adapted to receive a lock plate, the Ops-Core photo confirms that the VAS Shroud has an insert portion that is adapted to receive a lock plate and has in fact received it.

The contorted interpretation that the VAS Shroud insert is no longer adapted to receive a lock plate once it has received a lock plate is ridiculous. Ops-Core is left to argue that claim 22 somehow requires that the shell, insert, lock and release mechanism must be first incorporated into a single structure with the insert still open to receive a lock plate. According to Ops-Core,

simultaneous assembly with receipt of the lock plate is somehow prohibited by the language of claim 22.  However, there is nothing in the language of claim 22 that would suggest imposing such a timing requirement on the claim.

## II. OPS-CORE'S NON-INFRINGEMENT ARGUMENT SELECTIVELY FOCUSES ON THE PREFERRED EMBODIMENT OF THE '810 PATENT WHILE IGNORING THE PLAIN MEANING OF THE SPECIFICATION.

Ops-Core argues that claim 22 of the '810 Patent requires that the shell, insert, lock and release mechanism must all be located on a single structure because this is what is shown in the preferred embodiment depicted in the '810 Patent.  This is contrary to the law.  *Ekchian v. Home Depot, Inc.,* 104 F.3d 1299, 1303 (Fed. Cir. 1997); *see also, Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1309 (Fed. Cir. 2005) ("Although the sole embodiment described in the specification depicts a unitary structure, the mere depiction of a structural claim feature as a unitary in an embodiment, without more, does not mandate that the structural limitation be unitary." (citation omitted)).  It is also contrary to the express statement in the specification of the '810 Patent that "this invention may be practiced otherwise than as specifically described."  '810 Patent, col. 4, lns. 60-61.  (Daly Decl., Ex. A.)  Moreover, beyond this, it is absolutely contrary to the plain meaning of the specification of the '810 Patent.

The specification of the '810 Patent describes the "shroud plate" as "an interface between a helmet mount and a helmet."  *See, id.*, at col. 1, lns. 7-9 and lns. 59-61.  Even in the block diagrams used by Ops-Core at pg. 12 of its Opposition, the interface between helmet mount and helmet is what it calls the "shroud plate" and the lock plate.  Regardless of terminology, there is no dispute that in the VAS Shroud assembly these two boxes contain all of the elements in claim 22.  It is undeniable that Ops-Core's interface is essentially the same as that recited in claim 22.  Breaking part of this interface into something that Ops-Core chooses to call the "shroud plate" is pure semantics, and not semantics driven by the specification of the '810 Patent.

The '810 Patent states:  "The shroud plate 10 may comprise an insert 16 that is integral with a shell 13 essentially making the plate one piece.  The shroud plate 10 may comprise two

integrally related pieces, the shell 13 and the insert 16, to optimize weight and durability." Col. 3, lns. 20-24. At this point in the specification, the "shroud plate" is being described solely in terms of a shell and an insert and the relationship between those pieces. There is no indication that any further pieces or components must be part of the structure to form a "shroud plate." The next component of the claim to be described is the "lock." With regard to the "lock," the specification states: "The insert 16 <u>may</u> also comprise an opening in a side wall designed to accommodate a lock 18 which is slidably coupled to the insert 16." Col. 3, lns. 34-36 (emphasis added). Thus, the incorporation of the lock in the structure is entirely permissive. No requirement for incorporation of the lock in the structure is expressed. The release mechanism is then described in conjunction with the permissive lock. Again, no requirement of incorporation in the structure is expressed. Indeed, as previously cited by Norotos, the specification states that "alternate arrangements of the lock 18 and release button 26 are possible." Col. 4, lns. 52-53. Accordingly, the specification of the '810 Patent supports Norotos' claim interpretation, not that of Ops-Core.

## III. <u>OPS-CORE MISREPRESENTS THE PROSECUTION HISTORY OF THE '810 PATENT DURING REEXAMINATION TO ARGUE AGAINST INFRINGEMENT OF THE PATENT.</u>

Ops-Core asserts that Norotos made arguments during reexamination of the '810 Patent that would require the lock and release mechanism be located on the same structure as the shell. Ops-Core makes this assertion in a context that suggests that the argument by Norotos was made with regard to claim 22. This is not the case. The only arguments and excerpts from the reexamination that Ops-Core cites refer only to claim 1 of the '810 Patent. Claim 1 is not at issue in the pending motions. In fact, Norotos has not asserted claim 1 of the '810 Patent against Ops-Core in this case.

During reexamination, claim 1 of the '810 Patent was amended to add the language "the release button is centrally located at a bottom edge of the shell." This amendment does indeed change claim 1 from a claim without requirement as to the release button being on the shell to

one where it is at least required that it be located at a particular position relative to the shell. However, Norotos' arguments, relative only to claim 1, were directed to the location of the button relative to the shell rather than the button being on the shell. Moreover, these arguments concerned only claim 1. Claim 22 does not contain any such language. As such, this language and Norotos' arguments with respect to it have no relevance to claim 22.

As Norotos has previously pointed out, claim 22 was amended and distinguished from the prior art solely by clarifying the meaning of "smooth." Ops-Core argued that claims of this type were anticipated by a two-part assembly, Norotos did not contest this assertion, which was accepted by the Examiner, and Norotos was nonetheless able to distinguish the prior art as acknowledged by the Examiner based upon the absence of "projections on which a shroud line may catch." Ops-Core's attempt to misdirect attention from these facts by discussing the irrelevant claim 1 is telling.

### IV.   CONCLUSION.

Infringement in this case turns on claim interpretation, particularly whether claim 22 requires that the shell, insert, lock and release mechanism all be located on a single structure. This is a matter of law. Nothing in the claim language itself compels the strict reading that the shroud plate interface has to be located on a single structure before use of the interface. The specification of the '810 Patent is also permissive in its description of the structure involved. Again, nothing dictates a strict and strained reading regarding how exactly and when the elements are assembled.

The interface compelled by Ops-Core and its VAS Shroud is admittedly the same as that recited in claim 22. If this is not literal infringement, Ops-Core has offered no counter argument whatsoever to it being infringement under the doctrine of equivalents. Merely moving elements from a part of the interface called the "shroud plate" to a part called the "lock plate," while those elements remain structurally and functionally the same and achieve the same result is an insubstantial difference.

Ops-Core should be found to infringe claim 22 of the '810 Patent as a matter of law.

DATED: December 8, 2010                    Respectfully submitted,

                                           By */s/ Edward R. Schwartz*
                                              Edward R. Schwartz, BBO #448050

                                           **CHRISTIE, PARKER & HALE, LLP**
                                           **350 West Colorado Blvd., Suite 500**
                                           **Pasadena, California 91105**

                                           **Telephone:**   **(626) 795-9900**
                                           **Facsimile:**   **(626) 577-8800**
                                           **E-mail:**      *ers@cph.com*

                                           *Attorneys for Plaintiff And Counterdefendant, NOROTOS, INC.*

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

                                           */s/ Edward. R. Schwartz*
                                           Edward R. Schwartz

SES PAS933344.1-*-12/8/10 2:01 PM