UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NOROTOS, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>OPS-CORE, INC.,<br><br>      Defendant. | Civil Action No: 09-CV-10215-NG<br><br>**LEAVE TO FILE GRANTED ON DECEMBER 17, 2010** |

**DEFENDANT OPS-CORE, INC.'S
REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AND FOR SANCTIONS**

  Defendant Ops-Core, Inc. ("Ops-Core") submits the following reply memorandum in further support of its motion for summary judgment that Ops-Core does not infringe the patents in suit, and for sanctions. As set forth below, plaintiff Norotos, Inc. has failed to demonstrate in its opposition or in its own motion for summary judgment that Ops-Core's VAS Shroud infringes the asserted patent claims, either literally or under the doctrine of equivalents. Moreover, because the arguments made by Norotos are objectively baseless, the Court should find this an exceptional case pursuant to 35 U.S.C. Section 285 and should award Ops-Core its costs and attorneys' fees.

**I. The VAS Shroud Does Not Literally Infringe Either the '810 or the '276 Patent**

  As Ops-Core has previously argued, the plain meaning of the asserted patent claims, supported by the specifications of both the '810 and the '276 Patents, requires a single structure, a shroud plate, comprising a shell, an insert, a lock and a release mechanism. Accordingly, an assembly of the VAS Shroud with a helmet mount that contains a lock and release mechanism cannot infringe as Norotos argues.

In its opposition to Ops-Core's motion (and in its own cross-motion for summary judgment), Norotos fails to identify any disclosure of a two-part assembly in the claims or specifications.[1] Instead, Norotos argues that the claim language should be expanded to cover such an assembly because the specifications use "permissive" language in describing preferred embodiments in which the insert, lock and release mechanism are located on the shell, and because the specifications state that "alternate arrangements" are possible. *See* Reply Brief in Support of Plaintiff's Motion for Summary Judgment (Docket No. 53) ("Norotos Reply") at 6.

The specifications do not, however, actually disclose any "alternate arrangements" in which the lock and/or release mechanism are located on a structure separate from the shroud plate. On the contrary, the only "alternate arrangements" disclosed locate the release button adjacent to the lock on the shell. The full quote, including the following italicized language misleadingly left out by Norotos in its brief, states: "Further, alternative arrangements of the lock and release button are possible. *For instance, the release button may be located adjacent to the lock.*" '810 Patent, col. 4, ll 52-54 (emphasis added). Because Norotos's claim construction is not supported by the specifications, it should be rejected. *See Lockwood v. Amer. Airlines, Inc.*, 107 F.3d 1565, 1575 (Fed. Cir. 1997) (rejecting interpretation of claim limitation that was inconsistent with written description); *Athletic Alternatives, Inc. v. Prince Manuf., Inc.,* 73 F.3d 1573, 1581 (Fed. Cir. 1996) (rejecting broad claim interpretation where narrower interpretation was disclosed in the specification).[2]

---

[1] The only mention of a helmet mount anywhere in the specification of either patent is the summary of the invention as "a shroud plate to act as an *interface* between a helmet mount and a helmet" – a description that is inconsistent with Norotos's argument that the helmet mount may be part of the shroud plate. *See* '810 Patent col. 1, ll. 5-9, 59-61; '276 Patent col. 1 ll. 5-10 (emphasis added).

[2] Although Norotos asserts that Ops-Core argued a different interpretation of the claims and specifications in its request for reexamination of the '810 Patent, Norotos fails to cite any authority suggesting that an ex parte requester's arguments during reexamination are relevant to the construction of any reissued claims or have any other

Moreover, as Ops-Core has previously noted, an accused assembly that included a shell, insert, lock and release mechanism still would not infringe because it would not meet all of the other claim limitations, including that the insert be "adapted to receive a lock plate." In response, Norotos argues that the accused assembly may meet some claim limitations when assembled and others when disassembled. *See* Norotos Reply at 4-5. Neither the claim language nor the specifications, however, support this interpretation. The claims require a "shroud plate . . . comprising a shell, an insert, a lock and a release mechanism," "wherein the insert is adapted to receive a lock plate"; they do not suggest that these elements may be present at different times, before or after assembly. Because the assembly of a shroud plate and a helmet mount fails to meet all the limitations of any asserted patent claim, there is no genuine issue of material fact as to whether the VAS Shroud literally infringes either the '810 Patent or the '276 Patent.

**II.  Ops-Core's VAS Shroud Does Not Infringe Under the Doctrine of Equivalents**

In the alternative, Norotos argues that if the claims are construed as limited to a single structure, the VAS Shroud may still infringe under the doctrine of equivalents. *See* Opposition to Defendant's Motion for Summary Judgment and for Sanctions (Docket No. 38) at 13. According to Norotos, the placement of the lock and release mechanism on a detachable helmet mount instead of on the shroud plate itself is an "insubstantial" change from the claimed invention because it simply moves elements from one structure to another. *Id.* (citing *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 41-42 (1929) and *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989)).

---

effect in subsequent litigation between the requester and the patent owner. The prosecution history that is ordinarily considered in claim construction "includes all express representations *made by or on behalf of the applicant* to induce a patent grant, or, as here, to reissue a patent." *See, e.g., Standard Oil Co. v. Amer. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985) (emphasis added). Moreover, there is no indication in the reexamination history that the examiner ultimately interpreted the reissued claims as covering a two-part assembly.

The cases cited by Norotos do not, however, "authorize rearrangement of structural claim limitations" to prove infringement by equivalents. *See DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1333 (Fed. Cir. 2001) (affirming summary judgment of non-infringement); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1109 (Fed. Cir. 2000) (same). Unlike the "reciprocal changes" in *Sanitary Refrigerator* and *Corning Glass Works*, the difference between a unitary shroud plate and a two-part assembly with a helmet mount is not an insubstantial change; the placement of the lock and release mechanism on a protruding helmet mount rather than on the shell causes the device to function differently.

Indeed, Norotos argued during reexamination of the '810 Patent that locating the release mechanism on the shroud plate itself (particularly on the bottom edge) provides safety advantages over the prior art, such as enabling night vision goggles to be engaged with an upward force "*away* from the user's face." *See* Declaration of Thomas J. Daly in support of Norotos's motion for summary judgment (Docket No. 42), Exhibit J at 12 (emphasis in original).[3] The release mechanism in the accused two-part assembly not only omits this functionality but functions in a substantially opposite manner, and thus cannot be the equivalent of a release mechanism located on the shroud plate.

Moreover, Norotos's claims describe a "relatively simple structural device" and are at most entitled to a very narrow range of equivalents. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425-26 (Fed. Cir. 1997). The limitation of "a shroud plate . . . comprising" a shell, insert, lock and release mechanism thus is not entitled to a range of equivalents that would

---

[3] Norotos's argument during reexamination that the location of the release mechanism distinguished its invention from the prior art also limits the scope of equivalents that Norotos may now claim. *See* Ops-Core Opposition at 7-8; *Sage Prods., Inc v. Devon Indus., Inc.,* 126 F.3d 1420., 1429-30 (Fed. Cir. 1997) (finding infringement by equivalents precluded by patent owner's statement during prosecution); *Lockwood*, 107 F.3d at -1575 (same).

encompass a two-part assembly of a shroud plate and an arm-shaped helmet mount. Indeed, to find such a broad range of equivalents would impermissibly vitiate this claim limitation. *See Sage Prods., Inc.*, 126 F.3d at 1429; *Moore U.S.A., Inc.*, 229 F.3d at 1106.

### III. This Case Should Be Declared an Exceptional Case and Ops-Core Should Be Awarded Attorneys' Fees and Costs

Finally, because Norotos's infringement arguments are objectively baseless, the Court should find that this case is an exceptional case pursuant to 35 U.S.C. Section 285 and award attorneys' fees and costs to Ops-Core. *See Eltech Sys. Corp. v. PPG Indus, Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990). As discussed in Ops-Core's motion for summary judgment, Norotos brought this action and has continued to pursue it despite being repeatedly informed that its infringement claims were baseless. After receiving Ops-Core's motion, Norotos did not withdraw its claims, but instead filed its own cross-motion for summary judgment based on the same objectively baseless theory of infringement. As a result, Ops-Core has incurred substantial additional costs that could have been avoided.[4]

Norotos defends Ops-Core's motion for sanctions by asserting in conclusory fashion that it "believes that its claim interpretation is correct." Norotos Opposition to Ops-Core's Motion for Sanctions (Docket No. 57) at 1. But by pursuing an infringement theory with no support in the patent claims or specifications, despite repeated warnings that its infringement theory is without support, Norotos cannot avoid sanctions by hiding behind an unreasonable "belief" that is objectively baseless. *See ICU Medical, Inc. v. Alaris Medical Sys., Inc.,* 558 F.3d 1368 (Fed. Cir. 2009). The Court should find that this case is exceptional.

---

[4] Ops-Core has also filed a separate motion for sanctions pursuant to Rule 11 (Docket No. 55). Ops-Core's request for costs and attorneys' fees pursuant to Section 285, however, may be decided based on the summary judgment record.

## **CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment dismissing Norotos's infringement claims in their entirety and should find this case exceptional and award Ops-Core its costs and attorneys' fees.

Dated: December 23, 2010              Respectfully submitted,

**OPS-CORE, INC.**,

By its attorneys,

/s/ David S. Godkin
David S. Godkin (BBO#196530)
Anne Marie Longobucco (BBO#649299)
Birnbaum & Godkin, LLP
280 Summer Street
Boston, MA  02210
617-307-6100
godkin@birnbaumgodkin.com
longobucco@birnbaumgodkin.com

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on the above date.

/s/ David S. Godkin
David S. Godkin