UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10215-RGS

NOROTOS, INC.

v.

OPS-CORE, INC.

MEMORANDUM AND ORDER ON
MOTION OF OPS-CORE, INC., FOR SUMMARY JUDGMENT
OF INVALIDITY OF U.S. PATENT NO. 6,751,810

February 23, 2012

STEARNS, D.J.

Defendant Ops-Core, Inc., having been found to infringe claim 22 of United States Patent No. 6,751,810 ('810 patent), moves for summary judgment that claim 22 is invalid for lack of written description. For the reasons stated, Ops-Core's motion will be denied.

I.   **Background**

This case was initially heard by Judge Gertner, who has since retired. The essential facts are set out in her decision on the parties' cross-motions for summary judgment on competing claims of infringement. *See Norotos Inc. v. Ops-Core, Inc.*, 2011 WL 3157201 (D. Mass. 2011). Some additional facts pertinent to a resolution of the instant motion are recited in this decision.

The '810 patent teaches a "shroud plate for headgear comprising a shell, an insert, a lock and a release mechanism wherein the shell extends around at least a portion of the insert has a smooth surface with rounded edges and corners and is shaped to match the contour of the headgear. Further, the insert is adapted to receive a lock plate, the lock is adapted to secure the lock plate to the insert, and the release mechanism allows for removal of the lock plate from the insert." Col. 2, lls. 1-9. The '810 patent with its 20 claims was originally issued on June, 22, 2004, and assigned to plaintiff Norotos, Inc.

After Norotos brought this Complaint against Ops-Core in February of 2009, Ops-Core requested an *ex parte* reexamination of the claims of the '810 patent by the United States Patent and Trademark Office (PTO). Ops-Core cited prior art that had not been brought to the attention of the PTO during the prosecution of the '810 patent. The PTO granted the request for reexamination. In response to the reexamination, Norotos amended each of the 20 original claims of the '810 patent, and added new claims 21-23.

Claim 22 is at issue in this case:

> A shroud plate for headgear comprising a shell, an insert, a lock and a release mechanism,
>
> > wherein the shell extends around at least a portion of the insert and has an external surface that faces away from the headgear when the shroud plate

>is attached to the headgear, a back surface that faces toward the headgear when the shroud plate is attached to the headgear and a periphery;
>
>wherein the external surface is smooth with rounded edges and corners at the periphery, such that the shell has no projections on which a shroud line may catch and is shaped to match the contour of the headgear;
>
>wherein the insert is adapted to receive a lock plate;
>
>wherein the lock is adapted to secure the lock plate to the insert; and
>
>wherein the release mechanism allows for removal of the lock plate from the insert.

In the cross-motions for summary judgment on the issue of infringement, the parties disputed whether the "shroud plate . . . comprising a shell, an insert, a lock and a release mechanism" was embodied in a unitary structure with an affixed lock and release mechanism, or whether it might consist of an assembled structure consisting of a shell and a mount arm, with the mount arm providing the lock and release mechanism. *Norotos*, 2011 WL 3157201 at *8.

Based on her reading of the specification and the prosecution history, Judge Gertner construed "shroud plate" as "an interface that can be either a unitary structure or an assembled device, which attaches headgear – such as a helmet – to a night vision device mounted on an arm." *Id.* at *10. She reasoned that although the '810 patent specification depicted the shroud plate as a unitary structure and did not explicitly describe a shroud plate with a mount arm contributing the lock and release mechanism,

*id.* at *9, it used non-limiting rather than restrictive language when describing the preferred embodiment. *Id.* She also noted that in its reexamination request to the PTO, Ops-Core asked the patent examiner to consider an assembled helmet mounting bracket and mount arm as prior art anticipating or obviating the claims of the '810 patent. *Id.* The patent examiner did so, *id.* at *3, and Norotos agreed that "persons of ordinary skill in the art would find it entirely logical that the pieces would form an assembly, since the lock and release mechanism serve a purpose only when combined with the shell and insert." *Id.* at *9. Moreover, during the reexamination, Norotos distinguished the shroud plate of the '810 patent from the prior art based on its smooth shape and rounded edges, and not its unitary structure. *Id.* at *10. Thus, Judge Gertner concluded that the prosecution history of the '810 patent did not limit the shroud plate to a unitary structure. *Id.*

Based on her claim construction, Judge Gertner found that Ops-Core's accused VAS shroud, which uses a mount arm to provide the lock and release mechanism, literally infringed claim 22. *Norotos*, 2011 WL 3157201 at *11-12. Ops-Cores now seeks summary judgement that claim 22 is invalid for lack of written description because the '810 patent does not disclose an embodiment of the shroud plate in which a mount arm contributes the lock and release mechanism. The court heard oral argument on the motion on February 9, 2012.

4

## II.     Discussion

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986). The moving party bears the burden of establishing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

An issued claim is entitled to a presumption of validity. 35 U.S.C. § 282. To overcome this presumption and prove invalidity, Ops-Core must demonstrate that claim 22 lacks adequate written description by clear and convincing evidence. *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1351 (Fed. Cir. 2011). One of the quid pro quos of the grant of a patent is that the inventor must disclose a written description of the invention in the patent's specification. 35 U.S.C. § 112. "Specifically, the description must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed. In other words, the test for

sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (internal citations and quotation marks omitted).

"Compliance with the written description requirement is a question of fact," *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009), and there are no bright line rules by which to measure the specifics that must be disclosed to satisfy the test of sufficiency of the description. *Ariad*, 598 F.3d at 1351. As a starting point, the written description analysis "must [be] base[d] . . . on proper claim construction." *Koninklijke Phillips Elec. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1336 (Fed. Cir. 2010). "[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad*, 598 F.3d at 1351. The level of detail required, therefore depends on "the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Id.* A patent's disclosure "does not have to provide *in haec verba* support for the claimed subject matter at issue." *Yingbin-Nature (Guangdong) Wood Indus. Co., Ltd. v. Int'l Trade Comm'n*, 535 F.3d 1322, 1334 (Fed. Cir. 2008) (citations and quotation marks omitted). "[A] patent claim is not necessarily invalid for lack of written description just because it is broader than the specific examples

6

disclosed." *Martek Biosci. Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1371 (Fed. Cir. 2009). On the other hand, a description that has the effect of rendering a claimed invention obvious will not satisfy the written description requirement. *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-1572 (Fed. Cir. 1997).

Here, Ops-Core argues that claim 22 of the '810 patent fails the written description test because the '810 patent does not disclose the full scope of claim 22 as construed, namely, that the shroud plate need not have its lock and release mechanism affixed to a unitary structure, but may also consist of an assembled shroud plate and mount arm on which the lock and release mechanism is located. Ops-Core does not allege that the written description of the '810 patent specification is in any other respect lacking.

As noted by Judge Gertner, the '810 patent, while it does not explicitly describe a shroud plate with a mount arm lock and release mechanism, also does not limit the shroud plate to a unitary structure. *Norotos*, 2011 WL 3157201 at *9. The specification clearly states that the disclosed embodiment (a unitary structure) is an "exemplary embodiment." *See, e.g.,* '810 patent, col. 2, lls. 29, 34, and 54. The '810 patent allows for flexibility in the composition of the shroud plate and in the specification gives examples of alternatives. For instance, the specification provides that "[t]he shroud plate may comprise an insert that is integral with a shell essentially

making the plate one piece" or that "[t]he shroud plate may comprise two integrally related pieces, the shell and the insert, to optimize weight and durability." *Id.* col. 3, lls. 20-24. The specification discloses that in addition to a "hollowed indentation on a side wall to fit a corresponding edge of the lock plate," "[t]he insert *may* also comprise an opening in a side wall designed to accommodate a lock which is slidably coupled to the insert." *Id.* col. 3, lls. 32-36 (emphasis added). Although "the lock and release mechanism *may* be positioned opposite one another at different sides of the insert," "alternate arrangements of the lock and release button are possible." *Id.* col. 4, lls. 50-53 (emphasis added).

Of even greater significance is the '810 patent's description of the functions performed by the lock and release mechanism. The purpose of the lock is to "secure the lock plate" to the shell. '810 patent, col. 3, lls. 30-36. The purpose of the release mechanism is to permit the user to "release the night vision device from the insert." *Id.* col. 4, lls. 36-39. The '810 patent further discloses that the lock and release mechanism may be connected by a link plate, and that springs may be employed at different locations to bias the mechanism in a locked position. *Id.* col. 3, l. 57–col. 4, l. 11. The result is that the lock plate may be coupled with the insert in a "snap-lock action." *Id.* col. 4, lls. 12-18. Ops-Core does not argue (nor could it), that by locating the lock and release mechanism on the mount arm rather than on the shroud plate itself,

its functions are no longer performed in the disclosed manner.

Although there is no question as to what the specification of the '810 patent literally discloses, neither party has presented direct evidence regarding what a person of ordinary skill in the art would understand the specifications of the '810 patent to disclose. Ops-Core, in its opposition to Norotos's now withdrawn motion for summary judgment of validity, *see* Dkt #s 76 and 91, offered the expert report of Paul Mulhauser, an experienced industrial design engineer. *See* Dkt # 86. Mulhauser opined that a person of ordinary kill in the art "would be a person with at least a bachelor's degree in industrial design or mechanical engineering. That person should also have demonstrated practical experience (as demonstrated by patents and product commercialization) in the conception, design and engineering of products of equivalently relevant technical sophistication. That person should also have experience in the design of helmet mounting electro-optical vision systems." *Id.* at 4. Thus, according to Ops-Core's own expert witness, the person of ordinary skill in the art is a person with a substantial amount of design experience, including relevant experience with helmet mounting electro-optical vision systems and their attachment to helmets (the objective of the '810 patent). It would seem reasonable, therefore, that the sufficiency of the written description of claim 22 be viewed from the perspective of that substantial relevant experience. *See Ariad*, 598 F.3d at 1351.

Moreover, "[t]he person of ordinary skill . . . is presumed to be aware of all the pertinent prior art." *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986). During the reexamination of the '810 patent, the parties and the patent examiner agreed that the pertinent prior art for the '810 patent includes a helmet mounting bracket and mount arm assembly. Therefore, a person of ordinary skill in the art of the '810 patent would be presumed to be aware of prior art shroud plates that are not unitary in construction, but consist rather of an assembly in which a mount arm contributes the lock and release mechanism.

The evidence, viewed as a whole (with all reasonable inferences drawn in Norotos's favor), establishes a genuine dispute of material fact as to whether the '810 patent "allow[s] persons of ordinary skill in the art to recognize that [the inventor] invented [a shroud plate that may be an assembled device where a mount arm contributes the lock and release mechanism]." *Ariad*, 598 F.3d at 1351. In *Laryngeal Mask Co. Ltd. v. Ambu*, 618 F.3d 1367 (Fed. Cir. 2010), the Federal Circuit found that a similar fact pattern precluded summary judgment of invalidity for lack of written description. The patent at issue in *Ambu* (the '100 patent), related to laryngeal mask airway devices. These devices deliver anesthetic gases to patients during surgery and establish unobstructed airways in patients in emergency situations. *Id.* at 1369. The devices contain an airway tube attached to a backplate, which is surrounded by an

inflatable cuff. *Id.* The cuff is inserted into the patient's mouth and throat, and then is inflated to form a seal around the patient's laryngeal inlet. *Id.* The '100 patent disclosed an improved laryngeal mask that minimized the risk of the uninflated cuff folding over on itself during insertion (and forming an incomplete seal or causing discomfort to the patient) by adding a "reinforcing rib which serves to stiffen the leading end of the LMA-device during the course of the procedure for its insertion." *Id.* (citation omitted).

The relevant claim of the '100 patent required "at least a portion of the posterior portion of a wall of the cuff in the distal region being thicker and stiffer than other portions of the cuff." *Ambu*, 618 F.3d at 1374. The district court construed this language to mean that the "thicker and stiffer" cuff portion did not have to be connected to the backplate. *Id.* Based on this construction of the claim, the district court granted Ambu summary judgment of invalidity for lack of written description because the '100 patent specification did not disclose a thicker and stiffer cuff portion that is not connected to the backplate. *Id.*

The Federal Circuit reversed. In holding that there was a genuine dispute of material fact that precluded summary judgment, the Court noted that the '100 patent does not require that the cuff reinforcement to be connected to the backplate. *Ambu*, 618 F.3d at 1375. Moreover, when describing a cuff reinforcement being connected

11

to the backplate, the specification used non-limiting language such as "as shown," or "[i]n a preferred aspect." *Id.* at 1734-1735. Therefore, "one of ordinary skill in the art could read the Cuff Wall Thickening Passage as disclosing a thickened cuff portion that need not be connected to the backplate." *Id.* at 1735.

As with the specification in the *Ambu* '100 patent, the '810 patent also uses non-limiting language when describing the location of the lock and release mechanism. In attempting to distinguish *Ambu*, Ops-Core argues that the patentee in that case submitted expert declarations that a person of ordinary skill in the art would understand the '100 patent to disclose a cuff reinforcement not connected to the backplate, whereas here, Norotos has provided no similar expert evidence.[1] This is true, although

---

[1] Ops-Core also relies on *TurboCare Div. of Demag Delaval v. Gen. Elec. Co.*, 264 F.3d 1111, 1118-1119 (Fed. Cir. 2001), where the Court held that the disclosure of "a spring located . . . adjacent to said [seal] rings" did not provide sufficient written description for the claim term "a flat spring interposed between said casing shoulders and an inner surface of said outer ring portion of said ring segment." The springs in *TurboCare* were central to the invention of an improved labyrinth-type shaft seal that depended on the springs to reduce leakage and rubbing damage. *Id.* at 1113-1115. In the instant case, as Norotos pointed out at the hearing, the inventor of the '810 patent was not concerned with the location of the lock and release mechanism of the shroud plate. Rather, the invention was a solution to the problem of "sharp edges or hook portions or any other type of crevice or opening on which an opening parachute shroud line may snag." '810 patent, col. 1, lls. 65-67. Moreover, in *TurboCare,* there was no evidence that a person of ordinary skill in the art was aware of the positions of the springs for a labyrinth-type shaft seal as claimed. Thus, the level of description required of the springs in *TurboCare* is not comparable to the level of description required for the location of the lock and release mechanism here.

of little significance. (Ops-Core, through the Mulhauser declaration, does provide a workable definition of the level of skill and knowledge to be brought to bear). The evidence establishes that a shroud plate with a mount arm contributing the lock and release mechanism was already known in the art. "[I]n some instances, a patentee can rely on information that is 'well-known in the art' to satisfy written description." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012) (citation omitted). Nothing in the '810 patent contradicts prior art providing different locations for the lock and release mechanism. *See id.* Indeed, the '810 patent specifically contemplated "alternate arrangements of the lock and release button." '810 patent, col. 4, ll. 52-53. Thus, in light of the prior art, a finder of fact could reasonably determine without the aid of expert testimony that a person of ordinary skill in the art (that is, one with industrial design experience encompassing helmet mounts) would understand the '810 patent to disclose a shroud plate consisting of an assembled device in which a mount arm contributes the lock and release mechanism.

## III.  Conclusion

For the foregoing reasons, Ops-Core's motion for summary judgment of invalidity of claim 22 of the '810 patent for lack of written description is denied. The Clerk will set the case for trial before a jury.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE